## FITZGERALD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. RAILROADS—DEPOT GROUNDS—USE BY PUBLIC—INJURIES—NEGLIGENCE—LIA BILITY.

At a terminal of defendant's railroad on a navigable river it maintained a train shed, which connected with defendant's dock. To defendant's knowledge, the public had been accustomed to pass through the train shed to the depot and dock, which was the usual course of travel thereto, without protest. Plaintiff's father, a steamboat captain navigating the river, had been permitted to land his steamer at such dock on several occasions, and on the night of her injury plaintiff went through the train shed to the dock to meet her father. After an excursion boat left the dock, the plaintiff and others started to return through the train shed, which was thrown down by a severe windstorm by reason of its unsafe condition. *Held*, that plaintiff was in the shed at the implied invitation of the railroad, and was entitled to recover for injuries sustained by its negligent maintenance thereof, in the absence of contributory negligence.

Williams, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Mary A. Fitzgerald against the New York Central & Hudson River Railroad Company. From a judgment dismissing the complaint and directing a nonsuit after a verdict in favor of plaintiff, she appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and WILLIAMS, JJ.

V. K. Kellogg, for appellant.
Henry Purcell, for respondent.

McLENNAN, J. The defendant, at all the times mentioned in the complaint, was a railroad corporation engaged in operating, among others, a branch railroad known as the "Cape Vincent Branch of the Rome, Watertown & Ogdensburg Railroad," extending to Cape Vincent, a village of about 1,000 inhabitants, situate on the banks of the St. Lawrence river, about 25 miles from the city of Watertown, and opposite and about 12 miles distant from the city of Kingston, Ontario. At Cape Vincent the defendant's railroad terminated at its depot, and a long train shed connected therewith, located near to and parallel with the river front. Connected with the depot and shed, the defendant maintained a dock about 300 feet long, where steamers plying upon the St. Lawrence landed for the purpose of facilitating the interchange of traffic, passengers and freight, between such steamers and defendant's trains. The public, as well as persons having business in defendant's depot, in going to and from the dock, had been accustomed for years to pass through the train shed, to the knowledge of the defendant. Such was the usual course of travel, and during the summer season the place was much frequented by residents of the village, without objection or protest on the part of the defendant. The plaintiff is a resident of Cape Vincent. Her father, at the time in question, was engaged as captain of a steamboat navigating the St. Lawrence river. While he or the steamer

which he operated had no business connection with the defendant, he had occasionally landed at its dock for the purpose of transferring passengers and freight. His place of landing, however, was at another dock, a considerable distance away. On the evening of September 11, 1895, at about 8 o'clock, the plaintiff went to the dock, having passed through defendant's train shed, the usual route of travel, expecting to meet her father, whom she testified she expected would land that night at the dock. The father did not land his steamer at the dock, but an excursion train had come from Watertown with passengers for Kingston, and the boat which was to carry the passengers to Kingston was lying at the end of the dock. The plaintiff, being at the depot, and seeing the excursionists going to the dock, went with them, as she testified, expecting to see friends from Kingston. Immediately after the excursion boat left, the plaintiff and a large number of other people left the dock to return to the depot and their homes in the village. There was a severe windstorm, and, as the plaintiff was passing through defendant's train shed on her way home, the shed blew down, and she sustained the injuries for which she seeks to recover.

The claim is that the defendant was guilty of negligence in maintaining an unsafe and dangerous train shed. The verdict of the jury determined that issue favorably to the plaintiff, and, there being ample evidence to support such determination, the verdict should be regarded as final upon that issue. The same may be said in respect to the alleged contributory negligence of the plaintiff. In fact, there is no evidence which tends to support an imputation of negligence as against her.

The sole question presented by this appeal is whether or not, under the evidence and circumstances disclosed by the record, the defendant owed any duty or such duty to the plaintiff as made it liable to her for the result of its negligence in maintaining an unsafe and dangerous train shed. Upon the evidence it must be conceded that there was no contractual relation existing between the plaintiff and the defendant. The plaintiff was not at defendant's dock or depot or in its train shed upon any business connected with the defendant. Neither did her father, whom she expected would land his boat at the dock, sustain any such relation. As to him it can only be said that previously, but infrequently, he had been permitted by the defendant to land his boat at the dock, as a matter of favor, and without compensation. The plaintiff, however, was in the train shed because she followed the usual route of travel from the dock, where she had a right to be, leading to her home. She was not a trespasser. In the light of the custom which had prevailed for years, to the knowledge of the defendant, she was, in effect, invited to go, with the other residents of the village, to the steamboat landing, whenever so inclined, and in so doing to take the usual and ordinary route leading from such landing, which was through its train shed. Under those circumstances she had a right to assume that the route which the defendant had pointed out by permitting its long continued use was reasonably safe. The principles of law which entitle the plaintiff to the exercise of reasonable care and prudence on the part of the de-

fendant to protect her against injury, are laid down in the case of Driscoll v. Newark, etc., 37 N. Y. 637, 97 Am. Dec. 761. Under that decision, the correctness of which has never been questioned, so far as we have been able to discover, the plaintiff is entitled to recover. In that case the plaintiff and others, with the knowledge of the defendant, had been accustomed to pass over its premises. In the use of its premises, and by blasting underneath or near the path which the plaintiff and others were in the habit of traveling, the plaintiff was injured, and it was held, it being shown that the blast which caused the injury was exploded without giving proper warning, that the defendant was liable; that the plaintiff was entitled to recover the damages caused thereby. A distinction is sought to be made between that case and the one at bar that the former involved active negligence, so called, while the negligence in the case at bar was only passive at most. We think the distinction does not apply where the facts and circumstances are such as are disclosed by the record in this case. The plaintiff, not by words, but in effect, by reason of the long continued use of the route over which she traveled, was invited by the defendant to go to its dock whenever she saw fit, and she had a right to assume that the route thus pointed out to her by the defendant was reasonably safe. The defendant did not occupy the position of a purely private owner of property. It was a public corporation. Its depot and dock were open to the public, and, so far as any regulations for their use had been promulgated, the public was entitled to use the same at will. Undoubtedly, it would have been competent for the defendant to have restricted the use of its premises to those having business with it; but no such restrictions were imposed, and by the custom and practice which prevailed the entire public was at liberty to go upon such premises without restriction. Some undoubtedly went from curiosity pure and simple. Others went, as is claimed by the plaintiff, to see friends arrive or depart on the steamer, which in law and in reason is hardly a distinction. Whatever the real nature of the business, all were invited to come, and from the evidence it would appear that at the season of the year when the accident occurred, and especially when there was an excursion, a large part of the population of the village assembled upon defendant's premises, and that such custom or habit had been in vogue for a long time, to the knowledge of the defendant, and with its passive acquiescence at least. At a place where a railroad corporation is in the habit of receiving the public in such large numbers and under such circumstances, we think it ought to be charged with the duty of seeing to it that the structures maintained by it at such place are in a reasonably safe condition, and such as not to endanger the safety of those who may go upon the premises.

It will hardly be useful to discuss the many cases cited by counsel in support of their respective contentions. It seems to us that, in view of all the decisions bearing upon the subject, the rule may be stated to be that a railroad corporation maintaining a depot, which the public is permitted to visit at will and without restriction, and through which the public is in the habit of passing to reach another business place of such corporation, is liable for injuries sustained by

any person passing through such depot on account of the negligent
maintenance of such structure, and without reference to whether or
not the injured person had actual contractual or business relations
with such corporation, if such injured person is himself free from
contributory negligence. It follows that the judgment of nonsuit
should be reversed, with costs, and that judgment should be directed
for the plaintiff upon the verdict of the jury, with costs.

Judgment of nonsuit reversed, with costs, and judgment directed
for the plaintiff upon the verdict of the jury, with costs.

ADAMS, P. J., and SPRING, J., concur. WILLIAMS, J., dis-
sents.